BOLIN, Judge.
On September 18, 1968, Jerry M. Free-land purchased a 1967 model “Shelby American GT 350” automobile from Rivers Ford, Inc., Monroe, Louisiana. Freeland made a down payment of $732.43 and financed the balance of $2794.07 by means of a chattel mortgage and note which was endorsed to Ford Motor Credit Company. Freeland failed to timely pay the first monthly installment on the note and the holder foreclosed and sold the car under executory process. Ford Motor Credit instituted the present suit against Freeland for a deficiency judgment. Freeland answered, and also made Rivers Ford a third party defendant alleging the car was defective when purchased, entitling him to a judgment against Rivers Ford for any judgment rendered against him plus a return of the down payment, expenses and attorneys’ fees. The lower court rendered judgment in favor of Ford Motor Credit against Freeland for the balance due on the purchase price of the car, and in favor of Freeland against Rivers Ford for the same amount under his third party demand, plus $732.43 for his down payment. From this judgment Rivers Ford appeals.
As neither Freeland nor Ford Motor Credit appeal nor answer the appeal, the only issue before this court is the correctness of the judgment in favor of Freeland on his third party demand against Rivers Ford. Although no written reasons were assigned the judgment was obviously predicated upon a finding the sale was subject to rescission because the Shelby automobile had redhibitory vices or defects.
The car was purchased through Joe Kvaternik, Jr., a salesman for Rivers Ford, who used the vehicle as his personal demonstrator. It was represented to the purchaser as having been driven between 11,-000 and 14,000 miles and was sold without any apparent defects. The Shelby American, a high-performance sports car manufactured by Ford Motor Company, was described as having inside “roll bars” for drag racing and being capable of a maxi *448 mum speed of approximately 140 miles per hour.
On the day the car was purchased Free-land, accompanied by his friend and coworker, Lawrence Hendrix, left that night to drive from Rayville to Venice, Louisiana where they were scheduled to work on an off-shore drilling rig. During the trip, an estimated distance of 300 miles, the car used approximately nine quarts of oil and the headlights failed to operate properly.
Freeland testified that immediately upon arrival at Venice he telephoned Joe Kva-ternik, Sr., who was also a salesman for Rivers Ford, and notified him of the difficulties he had experienced with the automobile during the trip.
After working only a day and a half Hendrix lost his job and, at Freeland’s request, drove the car back to Rivers Ford. Hendrix testified the car used an additional nine quarts of oil on the return trip and he experienced difficulty with the transmission and lights. Hendrix further testified that the day after he returned to Ray-ville he took the car to Rivers Ford and gave the keys to Kvaternik, Jr., advising the salesman about all the trouble he and Freeland had experienced with the vehicle on the trip to and from Venice, and particularly about the excessive use of oil and the transmission trouble.
Freeland testified that after working a few days his job was terminated and he returned to his home and contacted Rivers Ford in an effort to ascertain what was being done about his car. He was told by the salesman and his father that the vehicle had been taken to the local Dodge agency where it was being repaired by James Coats, a purported specialist in repairing high-performance sports cars. Coats kept the car about a week, when it was released to Freeland as repaired. After driving the vehicle a few days Freeland said the transmission was noticeably “slipping”. He took it back to Rivers Ford and was told by Kvaternik, Jr. he could not spend any more money on the car.
Freeland continued having difficulty with the transmission and, after making several attempts to locate a person qualified to work on this type car, took it to Paul Wnukowski, a mechanic doing business at Rayville, Louisiana. Wnukowski did some work on the transmission for which Freeland paid $124.88. This mechanic, however, testified he told Freeland he could not guarantee his work because he placed seventeen clutches in the transmission and was of the opinion the transmission would probably not “hold up”. Within a few days after the last repairs the same transmission trouble developed, and shortly thereafter the car became completely inoperable and Freeland parked it at his house.
Rivers Ford contends the only defect existing in the vehicle at the time of the sale was the excessive use of oil, which condition admittedly was corrected by Coats. However, Freeland claims the transmission trouble was never corrected.
The crux of this case is whether the transmission was defective at the time of the sale, and whether such defect rendered the automobile either absolutely useless or so inconvenient and imperfect as to entitle the buyer to a rescission of the sale under the following articles of the Louisiana Civil Code:
Art. 2475:
“The seller is bound to two principal obligations, that of delivery and that of warranting the thing which he sells.”
Art. 2476:
“The warranty respecting the seller has two objects; the first is the buyer’s peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices.”
Art. 2520:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient *449 and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice.”
Art. 2530:
“The buyer who institutes the redhibito-ry action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.”
Art. 2531:
“The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.”
We shall first consider the question of whether the defective transmission was a vice of such severity as to constitute grounds for an action to rescind the sale. The object of the sale being a high-speed sports car, it was essential that the trans-' mission be in working order for the vehicle to serve the purpose for which it was purchased. Assuming the car was not absolutely useless, we find it must be supposed Freeland would not have purchased it had he known of this defect. A cracked engine block was held to render an automobile so imperfect as to raise a presumption the purchaser would not have purchased it had he known of the vice. Leson Chevrolet Company, Inc. v. Barbier (La.App. 4 Cir. 1965), 173 So.2d 50, and Savoie v. Snell, 213 La. 823, 35 So.2d 745 (1948).
The next question is whether the vice or defect in the thing sold made its appearance within three days immediately following the sale so as to raise a presumption it existed before the sale. (Civil Code Article 2530). This being a factual question it can only be resolved by a close examination of the record. Hendrix testified the transmission trouble developed on the return trip from Venice to Rayville, which was within the three-day period. Hendrix further testified he told Mr. Kva-ternik.and his son about the transmission when he first returned the car to Rivers Ford. The Kvaterniks deny they were ever told of any transmission trouble. A careful review of the transcript of evidence reveals Kvaternik, Jr. was uncertain and vague in many areas of his testimony. He first said he never had any dealings with Hendrix, but later, on cross-examination, testified he could not remember whether Hendrix or Freeland brought the car back. Both he and his father were obviously confused about the facts surrounding the return and repair of the automobile. The testimony of Freeland and Hendrix appears to us to be positive and logical. We find the defect in the transmission manifested itself within three days of the sale and that Hendrix related this defect to Rivers Ford when he returned the car. There being no evidence to refute the presumption that the defective transmission existed before the sale, we find Freeland is entitled to rescind the sale.
As the seller did not attempt to conceal the defects when the car was sold, Freeland is entitled to recover only the amount he paid on the purchase price which is conceded to be $732.43. (Civil Code Art. 2531). Freeland also sued for all expenses occasioned by vendor’s breach of warranty and attorneys’ fees. These damages were not allowed, and since Free-land has not appealed this question is not before us.
The judgment is affirmed at appellant’s cost.